# UNITED STATES *v.* BANKS

No. 02–473.   Argued October 15, 2003—Decided December 2, 2003

SOUTER, J., delivered the opinion for a unanimous Court.

*David B. Salmons* argued the cause *pro hac vice* for the United States.   With him on the brief were *Solicitor General Olson, Assistant Attorney General Chertoff, Deputy Solicitor General Dreeben,* and *John A. Drennan.*

*Randall J. Roske,* by appointment of the Court, 538 U. S. 943, argued the cause and filed a brief for respondent.[*]

---

[*]*Timothy A. Baughman* filed a brief for Wayne County, Michigan, as *amicus curiae* urging reversal.

A brief of *amici curiae* was filed for Americans for Effective Law Enforcement, Inc., et al. by *Richard Weintraub, Bernard J. Farber, Wayne W. Schmidt,* and *James P. Manak.*

JUSTICE SOUTER delivered the opinion of the Court.

Officers executing a warrant to search for cocaine in respondent Banks's apartment knocked and announced their authority. The question is whether their 15-to-20-second wait before a forcible entry satisfied the Fourth Amendment and 18 U. S. C. § 3109. We hold that it did.

I

With information that Banks was selling cocaine at home, North Las Vegas Police Department officers and Federal Bureau of Investigation agents got a warrant to search his two-bedroom apartment. As soon as they arrived there, about 2 o'clock on a Wednesday afternoon, officers posted in front called out "police search warrant" and rapped hard enough on the door to be heard by officers at the back door. Brief for United States 3 (internal quotation marks omitted). There was no indication whether anyone was home, and after waiting for 15 to 20 seconds with no answer, the officers broke open the front door with a battering ram. Banks was in the shower and testified that he heard nothing until the crash of the door, which brought him out dripping to confront the police. The search produced weapons, crack cocaine, and other evidence of drug dealing.

In response to drug and firearms charges, Banks moved to suppress evidence, arguing that the officers executing the search warrant waited an unreasonably short time before forcing entry, and so violated both the Fourth Amendment and 18 U. S. C. § 3109.[1] The District Court denied the motion, and Banks pleaded guilty, reserving his right to challenge the search on appeal.

---

[1] The statute provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

34

A divided panel of the Ninth Circuit reversed and ordered suppression of the evidence found.   282 F. 3d 699 (2002).   In assessing the reasonableness of the execution of the warrant, the panel majority set out a nonexhaustive list of "factors that an officer reasonably should consider" in deciding when to enter premises identified in a warrant, after knocking and announcing their presence but receiving no express acknowledgment:

> "(a) size of the residence; (b) location of the residence; (c) location of the officers in relation to the main living or sleeping areas of the residence; (d) time of day; (e) nature of the suspected offense; (f) evidence demonstrating the suspect's guilt; (g) suspect's prior convictions and, if any, the type of offense for which he was convicted; and (h) any other observations triggering the senses of the officers that reasonably would lead one to believe that immediate entry was necessary." *Id.*, at 704.

The majority also defined four categories of intrusion after knock and announcement, saying that the classification "aids in the resolution of the essential question whether the entry made herein was reasonable under the circumstances":

> "(1) entries in which exigent circumstances exist and non-forcible entry is possible, permitting entry to be made simultaneously with or shortly after announcement; (2) entries in which exigent circumstances exist and forced entry by destruction of property is required, necessitating more specific inferences of exigency; (3) entries in which no exigent circumstances exist and non-forcible entry is possible, requiring an explicit refusal of admittance or a lapse of a significant amount of time; and (4) entries in which no exigent circumstances exist and forced entry by destruction of property is required, mandating an explicit refusal of admittance or a

lapse of an even more substantial amount of time."
*Ibid.*

The panel majority put the action of the officers here in the
last category, on the understanding that they destroyed the
door without hearing anything to suggest a refusal to admit
even though sound traveled easily through the small apart-
ment. The majority held the 15-to-20-second delay after
knocking and announcing to be "[in]sufficient . . . to satisfy
the constitutional safeguards." *Id.*, at 705.

Judge Fisher dissented, saying that the majority ought to
come out the other way based on the very grounds it
stressed: Banks's small apartment, the loud knock and an-
nouncement, the suspected offense of dealing in cocaine, and
the time of the day. Judge Fisher thought the lapse of 15
to 20 seconds was enough to support a reasonable inference
that admittance had been constructively denied. *Id.*, at 710.

We granted certiorari to consider how to go about apply-
ing the standard of reasonableness to the length of time
police with a warrant must wait before entering without per-
mission after knocking and announcing their intent in a fel-
ony case. 537 U. S. 1187 (2003). We now reverse.

## II

There has never been a dispute that these officers were
*obliged to knock and announce their intentions when execut-*
ing the search warrant, an obligation they concededly hon-
ored. Despite this agreement, we start with a word about
standards for requiring or dispensing with a knock and an-
nouncement, since the same criteria bear on when the offi-
cers could legitimately enter after knocking.

The Fourth Amendment says nothing specific about for-
malities in exercising a warrant's authorization, speaking to
the manner of searching as well as to the legitimacy of
searching at all simply in terms of the right to be "secure
. . . against unreasonable searches and seizures." Although
the notion of reasonable execution must therefore be fleshed

out, we have done that case by case, largely avoiding categories and protocols for searches. Instead, we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones. See, *e. g., Ohio* v. *Robinette,* 519 U. S. 33, 39 (1996) ("[W]e have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry"); *Ker* v. *California,* 374 U. S. 23, 33 (1963) (reasonableness not susceptible to Procrustean application); *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 357 (1931) (no formula for determining reasonableness; each case on its own facts and circumstances). We have, however, pointed out factual considerations of unusual, albeit not dispositive, significance.

In *Wilson* v. *Arkansas,* 514 U. S. 927 (1995), we held that the common law knock-and-announce principle is one focus of the reasonableness enquiry; and we subsequently decided that although the standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence," *Richards* v. *Wisconsin,* 520 U. S. 385, 394 (1997). When a warrant applicant gives reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a "no-knock" entry.[2] And even when executing a warrant silent about

---

[2] Some States give magistrate judges the authority to issue "no-knock" warrants, and some do not. See, *e. g., Richards* v. *Wisconsin,* 520 U. S. 385, 396, n. 7 (1997) (collecting state statutes and cases).

that, if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in. *Id.*, at 394, 396, n. 7.

Since most people keep their doors locked, entering without knocking will normally do some damage, a circumstance too common to require a heightened justification when a reasonable suspicion of exigency already justifies an unwarned entry. We have accordingly held that police in exigent circumstances may damage premises so far as necessary for a no-knock entrance without demonstrating the suspected risk in any more detail than the law demands for an unannounced intrusion simply by lifting the latch. *United States* v. *Ramirez*, 523 U. S. 65, 70–71 (1998). Either way, it is enough that the officers had a reasonable suspicion of exigent circumstances.[3]

## III

Like *Ramirez*, this case turns on the significance of exigency revealed by circumstances known to the officers, for the only substantive difference between the two situations goes to the time at which the officers reasonably anticipated some danger calling for action without delay.[4] Whereas the

---

[3] The standard for a no-knock entry stated in *Richards* applies on reasonable suspicion of exigency or futility. Because the facts here go to exigency, not futility, we speak of that alone.

[4] *Ramirez* and *Richards* v. *Wisconsin*, 520 U. S. 385 (1997), our cases addressing the role of exigency in assessing the reasonableness of a no-knock entry, involved searches by warrant for evidence of a felony, as does this case. In a different context governed by the Fourth Amendment, we have held that the risk of losing evidence of a minor offense is insufficient to make it reasonable to enter a dwelling to make a warrantless arrest. See *Welsh* v. *Wisconsin*, 466 U. S. 740 (1984). Courts of Appeals have applied *Welsh* to warrantless entries simply to search for evidence, considering the gravity of the offense in determining whether exigent circumstances exist. See, *e. g., United States* v. *Aquino*, 836 F. 2d 1268, 1271–1273 (CA10 1988); *United States* v. *Clement*, 854 F. 2d 1116, 1120 (CA8 1988) *(per curiam)*. We intimate nothing here about such warrantless entry cases. Nor do we express a view on the significance of the existence of a warrant in evaluating whether exigency justifies action in

*Ramirez* Magistrate Judge found in advance that the customary warning would raise an immediate risk that a wanted felon would elude capture or pose a threat to the officers, see *id.*, at 68, here the Government claims that a risk of losing evidence arose shortly after knocking and announcing. Although the police concededly arrived at Banks's door without reasonable suspicion of facts justifying a no-knock entry, they argue that announcing their presence started the clock running toward the moment of apprehension that Banks would flush away the easily disposable cocaine, prompted by knowing the police would soon be coming in. While it was held reasonable for the police in *Ramirez* to enter forcibly upon arrival, the Government argues it was equally reasonable for the officers to go in with force here as soon as the danger of disposal had ripened.

Banks does not, of course, deny that exigency may develop in the period beginning when officers with a warrant knock to be admitted, and the issue comes down to whether it was reasonable to suspect imminent loss of evidence after the 15 to 20 seconds the officers waited prior to forcing their way. Though we agree with Judge Fisher's dissenting opinion that this call is a close one, 282 F. 3d, at 707, we think that after 15 or 20 seconds without a response, police could fairly suspect that cocaine would be gone if they were reticent any longer. Courts of Appeals have, indeed, routinely held similar wait times to be reasonable in drug cases with similar facts including easily disposable evidence (and some courts have found even shorter ones to be reasonable enough).[5]

---

knock-and-announce cases when the reason for the search is a minor offense.

[5] Several Courts of Appeals have explicitly taken into account the risk of disposal of drug evidence as a factor in evaluating the reasonableness of waiting time. See, *e. g., United States* v. *Goodson,* 165 F. 3d 610, 612, 614 (CA8 1999) (holding a 20-second wait after a loud announcement at a one-story ranch reasonable); *United States* v. *Spikes,* 158 F. 3d 913, 925–927 (CA6 1998) (holding a 15-to-30-second wait in midmorning after a loud announcement reasonable); *United States* v. *Spriggs,* 996 F. 2d 320, 322–

A look at Banks's counterarguments shows why these courts reached sensible results, for each of his reasons for saying that 15 to 20 seconds was too brief rests on a mistake about the relevant enquiry: the fact that he was actually in the shower and did not hear the officers is not to the point, and the same is true of the claim that it might have taken him longer than 20 seconds if he had heard the knock and headed straight for the door. As for the shower, it is enough to say that the facts known to the police are what count in judging reasonable waiting time, cf., *e. g.*, *Graham* v. *Connor*, 490 U. S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"), and there is no indication that the police knew that Banks was in the shower and thus unaware of an impending search that he would otherwise have tried to frustrate.

And the argument that 15 to 20 seconds was too short for Banks to have come to the door ignores the very risk that justified prompt entry. True, if the officers were to justify their timing here by claiming that Banks's failure to admit them fairly suggested a refusal to let them in, Banks could at least argue that no such suspicion can arise until an occu-

323 (CADC 1993) (holding a 15-second wait after a reasonably audible announcement at 7:45 a.m. on a weekday reasonable); *United States* v. *Garcia*, 983 F. 2d 1160, 1168 (CA1 1993) (holding a 10-second wait after a loud announcement reasonable); *United States* v. *Jones*, 133 F. 3d 358, 361–362 (CA5 1998) *(per curiam)* (relying specifically on the concept of exigency, holding a 15-to-20-second wait reasonable). See also *United States* v. *Chavez-Miranda*, 306 F. 3d 973, 981–982, n. 7 (CA9 2002) ("*Banks* appears to be a departure from our prior decisions. . . . [W]e have found a 10 to 20 second wait to be reasonable in similar circumstances, albeit when the police heard sounds after the knock and announcement"); *United States* v. *Jenkins*, 175 F. 3d 1208, 1215 (CA10 1999) (holding a 14-to-20-second wait at 10 a.m. reasonable); *United States* v. *Markling*, 7 F. 3d 1309, 1318–1319 (CA7 1993) (holding a 7-second wait at a small motel room reasonable when officers acted on a specific tip that the suspect was likely to dispose of the drugs).

pant has had time to get to the door,[6] a time that will vary with the size of the establishment, perhaps five seconds to open a motel room door, or several minutes to move through a townhouse. In this case, however, the police claim exigent need to enter, and the crucial fact in examining their actions is not time to reach the door but the particular exigency claimed. On the record here, what matters is the opportunity to get rid of cocaine, which a prudent dealer will keep near a commode or kitchen sink. The significant circumstances include the arrival of the police during the day, when anyone inside would probably have been up and around, and the sufficiency of 15 to 20 seconds for getting to the bathroom or the kitchen to start flushing cocaine down the drain. That is, when circumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter; since the bathroom and kitchen are usually in the interior of a dwelling, not the front hall, there is no reason generally to peg the travel time to the location of the door, and no reliable basis for giving the proprietor of a mansion a longer wait than the resident of a bungalow, or an apartment like Banks's. And 15 to 20 seconds does not seem an unrealistic guess about the time someone would need to get in a position to rid his quarters of cocaine.

Once the exigency had matured, of course, the officers were not bound to learn anything more or wait any longer before going in, even though their entry entailed some harm to the building. *Ramirez* held that the exigent need of law enforcement trumps a resident's interest in avoiding all property damage, see 523 U. S., at 70–71, and there is no reason to treat a post-knock exigency differently from the no-knock counterpart in *Ramirez* itself.

---

[6] It is probably unrealistic even on its own terms. The apartment was "small," 282 F. 3d 699, 704 (CA9 2002), and a man may walk the length of today's small apartment in 15 seconds.

## IV

Our emphasis on totality analysis necessarily rejects positions taken on each side of this case. *Ramirez,* for example, cannot be read with the breadth the Government espouses, as "reflect[ing] a general principle that the need·to damage property in order to effectuate an entry to execute a search warrant should not be part of the analysis of whether the entry itself was reasonable." Brief for United States 18; Reply Brief for United States 4. At common law, the knock-and-announce rule was traditionally "justified in part by the belief that announcement generally would avoid 'the destruction or breaking of any house . . . by which great damage and inconvenience might ensue.'" *Wilson,* 514 U. S., at 935–936 (quoting *Semayne's Case,* 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 196 (K. B. 1603)). One point in making an officer knock and announce, then, is to give a person inside the chance to save his door. That is why, in the case with no reason to suspect an immediate risk of frustration or futility in waiting at all, the reasonable wait time may well be longer when police make a forced entry, since they ought to be more certain the occupant has had time to answer the door. It is hard to be more definite than that, without turning the notion of a reasonable time under all the circumstances into a set of sub-rules as the Ninth Circuit has been inclined to do. Suffice it to say that the need to damage property in the course of getting in is a good reason to require more patience than it would be reasonable to expect if the door were open. Police seeking a stolen piano may be able to spend more time to make sure they really need the battering ram.

On the other side, we disapprove of the Court of Appeals's four-part scheme for vetting knock-and-announce entries. To begin with, the demand for enhanced evidence of exigency before a door can reasonably be damaged by a warranted no-knock intrusion was already bad law before the Court of Appeals decided this case. In *Ramirez* (a case from the

Ninth Circuit), we rejected an attempt to subdivide felony cases by accepting "mild exigency" for entry without property damage, but requiring "more specific inferences of exigency" before damage would be reasonable. 523 U. S., at 69–71 (internal quotation marks omitted). The Court of Appeals did not cite *Ramirez.*

Nor did the appeals court cite *United States* v. *Arvizu,* 534 U. S. 266 (2002) (again, from the Ninth Circuit). There, we recently disapproved a framework for making reasonable suspicion determinations that attempted to reduce what the Circuit described as "troubling . . . uncertainty" in reasonableness analysis, by "describ[ing] and clearly delimit[ing]" an officer's consideration of certain factors. *Id.,* at 272, 275 (internal quotation marks omitted). Here, as in *Arvizu,* the Court of Appeals's overlay of a categorical scheme on the general reasonableness analysis threatens to distort the "totality of the circumstances" principle, by replacing a stress on revealing facts with resort to pigeonholes. *Id.,* at 274 (internal quotation marks omitted). Attention to cocaine rocks and pianos tells a lot about the chances of their respective disposal and its bearing on reasonable time. Instructions couched in terms like "significant amount of time," and "an even more substantial amount of time," 282 F. 3d, at 704, tell very little.

## V

Last, there is Banks's claim that the entry violated 18 U. S. C. § 3109. *Ramirez* held that the result should be the same under the Fourth Amendment and § 3109, permitting an officer to enter by force "if, after notice of his authority and purpose, he is refused admittance." We explained the statute's " 'requirement of prior notice . . . before forcing entry . . . [as] codif[ying] a tradition embedded in Anglo-American law,' " 523 U. S., at 72 (quoting *Miller* v. *United States,* 357 U. S. 301, 313 (1958)); see also *Sabbath* v. *United States,* 391 U. S. 585, 591, n. 8 (1968), and we held that § 3109 implicates the exceptions to the common law knock-and-

announce requirement that inform the Fourth Amendment itself, 523 U. S., at 73. The upshot is that § 3109 is subject to an exigent circumstances exception, *ibid.*, which qualifies the requirement of refusal after notice, just as it qualifies the obligation to announce in the first place. Absent exigency, the police must knock and receive an actual refusal or wait out the time necessary to infer one. But in a case like this, where the officers knocked and announced their presence, and forcibly entered after a reasonable suspicion of exigency had ripened, their entry satisfied § 3109 as well as the Fourth Amendment, even without refusal of admittance.

The judgment of the Court of Appeals is reversed.

*So ordered.*