NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2006
Decided January 31, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

No. 06-1688

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>    *v.*<br><br>JOSEPH A. TRZECIAK,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division<br><br>No. 2:04 CR 62<br><br>Philip P. Simon,<br>*Judge.* |

**O R D E R**

    A grand jury charged Joseph Trzeciak with possessing a gun despite a prior felony conviction, 18 U.S.C. § 922(g)(1), and three counts of illegally possessing pharmaceuticals, 21 U.S.C. § 844. Federal agents working with local officers had recovered the gun and drugs while executing a state search warrant at Trzeciak's home several hours after his arrest pursuant to an unrelated arrest warrant. After Trzeciak moved to suppress the gun and drugs, the government dropped the § 844 counts, and the district court denied his motion to suppress the gun. The court reasoned that, although even the government conceded that the search warrant was not supported by probable cause, the agents had acted in good faith when they relied on the warrant to retrieve the gun from Trzeciak's home. A jury subsequently found

him guilty on the gun count, and the district court sentenced him to 120 months' imprisonment, the statutory maximum, *id.* § 924(a)(2). On appeal Trzeciak in his argument on appeal completely ignores the *search* warrant and argues that the district court erred in denying his motion to suppress the gun because, he says, the police officers had no reason to believe he was inside his home when they entered to execute the *arrest* warrant. He also argues that application of the sentencing guidelines to him violated his rights under the Sixth Amendment. We affirm.

When he moved to suppress the gun and drugs, Trzeciak argued that the search warrant was invalid because it was "not based on probable cause and failed to specifically describe the items to be seized." The government responded since the officers had an unrelated warrant for his arrest they did not need the search warrant to enter his home. In response, Trzeciak conceded the arrest was valid but argued that police may not enter a suspect's home to arrest him without reason to believe he is inside, and that in this case the officers had no reason to believe he was inside his home at the time they entered to execute the warrant of arrest.

At the suppression hearing, Patrolman Matthew Porter testified that, at 12:26 a.m. on July 26, 2004, while patrolling the area around Trzeciak's home in Hammond, Indiana, he observed a van pulling out of Trzeciak's driveway. Porter explained that he had encountered Trzeciak before and knew there were two outstanding warrants for his arrest, one for a misdemeanor charge of domestic battery and the other for a felony charge of resisting arrest. Hoping to arrest Trzeciak, Porter cut off the van's access to the street, and the driver then maneuvered the van back up the driveway. Officer Porter activated the emergency lights on his patrol car and followed the van into the driveway. After calling for backup, Porter testified, he exited his car, drew his gun, and ordered Trzeciak and the female driver to remain in the van. Ignoring this instruction, Trzeciak jumped from the van, pointed a gun at Porter, and shouted, "What's up!" Porter testified that as he jumped back for cover, Trzeciak fled.

Shortly thereafter Porter arrested the driver, who told him that Trzeciak had fled along a pathway on the south side of the garage. Leaving the driver with another officer, Porter followed the pathway around the garage into Trzeciak's backyard. Unable to locate Trzeciak, Porter decided to search other nearby areas but returned to the backyard after seven other officers had surrounded Trzeciak's home. While looking around, Porter testified, he concluded that Trzeciak could not have escaped from the backyard because, except for the side path near the garage, as the area in question was surrounded by a six-foot-high fence. From his vantage point in the yard , Porter then observed what looked like the shadow of a person passing a set of closed blinds covering one of the windows. By then a SWAT team had arrived and taken control of the scene, so Porter returned to the front yard to speak with the driver of the van. She told him that, as far as she knew, she and Trzeciak had been alone in the house before Porter stopped them.

The leader of the SWAT team, Lieutenant Ralph Bogie, testified that, after he arrived around 2:00 a.m., members of the crisis-negotiation team tried for almost an hour to contact Trzeciak in the house while using a bull horn and the telephone. When that effort proved fruitless, they shot tear gas into the house around 4:00 a.m. Trzeciak did not emerge, and 15 minutes later Bogie forced his way through the rear door and saw Trzeicak pointing a gun at him standing at the bottom of the stairs. Bogie testified that he yelled "gun" and moved out of the line of fire. Then after ordering Trzeciak a number of time times to drop the gun, Bogie heard a metal object hit the floor. Another police officer at this time threw a "flash bang" diversionary device down the stairs, which allowed Bogie to take custody of Trzeciak.[1] At the foot of the stairs, Bogie testified, he observed the gun Trzeciak had pointed at him. But he did not retrieve the gun at this time. Instead, he and his SWAT team conducted an immediate protective sweep of the rest of the home in order that a search team could safely enter and proceed to collect evidence. The team entered the house at approximately 8:40 a.m., over four hours after Trzeciak was taken into custody.

Special Agent Daniel Mitten of the ATF, a member of the search team, testified that he became involved in a separate investigation of Trzeciak on July 23, 2004, three days before his arrest. Mitten explained that the marshals service had advised him that Trzeciak, a felon and fugitive, probably had firearms in his house and asked for his assistance in building a federal case. That was all Mitten knew until the early morning hours of July 26, when a deputy marshal notified him that the Hammond Police Department had arrested Trzeciak during the night and that he had pointed a gun at the officers immediately prior to his arrest. When Mitten arrived at Trzeciak's home around 7:30 a.m., he learned that a state judge had issued a search warrant for Trzeciak's home several days before, and that the warrant still had not been executed. Mitten contacted an assistant United States Attorney, who advised him that he could participate in a search under the authority of the unexecuted state search warrant. Thus, around 8:40 a.m., after the SWAT team had finished its protective search of the residence and the teargas had dissipated, Mitten and other ATF agents entered the house with Hammond officers to conduct a search. Mitten was not questioned about what, if anything, he or other agents recovered during their search. At trial, however, Hammond officer Todd Larson, a member of an ATF task force, testified that he recovered a .45 caliber semiautomatic handgun loaded with seven rounds of ammunition at the foot of the

---

[1] A "flash bang" is a "non-lethal device that produces a flash and a gunshot-type noise that stuns and disorients for about six to eight seconds. This diversionary tactic is effectively used by police departments, the F.B.I., and even military units to disorient suspects and ensure safety." *United States v. Jones,* 214 F.3d 836, 840 n.4 (7th Cir. 2000) (Coffey, J., dissenting in part and concurring in the judgment).

basement stairs.  Obviously, the court when making its ruling was also well aware of the plain view doctrine, which comes into play when dealing with search and seizure cases.

Upon the completion of the hearing, the district court denied Trzeciak's motion to suppress the gun.  The court reasoned that the search was conducted in good faith based on a facially valid warrant to search the house, and that, regardless, the gun inevitably would have been discovered because Lieutenant Bogie initially observed the gun in Trzeciak's hand being pointed at him when he entered the home pursuant to an arrest warrant.  Furthermore, an officer may lawfully seize items not listed in the warrant under the plain view doctrine "if the officer has a legal right to be in the place from where he sees the object subject to seizure, a lawful right of access to the object itself, and if the object's incriminating nature is immediately apparent." *Russell v. Harms*, 397 F.3d 458, 465 (7th Cir. 2005) (internal quotations and citations omitted).  Here, Trzeciak had dropped the gun in the basement at the time he was arrested and it remained in plain view to the officers when they came upon the scene.

Trzeciak proceeded to trial and was found guilty.  At sentencing the district court found by a preponderance of the evidence that Trzeciak had committed a felony under Indiana law by pointing his loaded gun at Patrolman Porter and Lieutenant Bogie.  Accordingly, the court increased the offense level by four under U.S.S.G. § 2K2.1(b)(5), which resulted in a total offense level of 28.  That offense level, combined with Trzeciak's Category V criminal history, yielded a guidelines imprisonment range of 110 to 137 months.  The trial court determined that a sentence within the guidelines would be reasonable given the nature of the offense, his extensive criminal record, the need to protect the public from further crimes by Trzeciak, and the need to deter others from engaging in similar conduct, and sentenced Trzeciak to the statutory maximum of 120 months.

On appeal Trzeciak argues that the district court erred in refusing to suppress the gun because, he contends, the SWAT officers did not have reason to believe he was inside his home when they entered to execute the *arrest* warrant.  But this argument (and the government's response) misses the point given that the gun was seized during the later execution of the search warrant, not when Trzeciak was arrested.  Trzeciak does not challenge the trial court's ruling that the search team relied in good faith on a facially valid search warrant issued by a state judge, *see United States v. Leon*, 468 U.S. 897, 918 (1984) (stating that evidence obtained pursuant to a warrant should be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule"); *United States v. Mykytiuk*, 402 F.3d 773, 778 (7th Cir. 2005) (same); *United States v. Brown*, 328 F.3d 352, 357 (7th Cir. 2003) (explaining that the exclusionary rule is a sanction that should be proportionate to the wrongdoing it punishes and should "not be used to make the person whose rights have been violated better off than he would be if no violation had occurred"), and, thus, he has waived this issue, *see Hojnacki v.*

*Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002) ("A party waives any argument that it does not raise before the district court or, if raised in the district court, it fails to develop on appeal."). If Trzeciak insists that the district court erred in finding that officers had reason to believe he was in his home at the time they entered to execute his arrest, then his argument is frivolous as there is nothing in the record to support it. *See United States v. Banks*, 540 U.S. 31, 36 (2003).

Trzeciak next argues that the district court violated his Sixth Amendment rights as interpreted by the Supreme Court in *United States v. Booker*, 534 U.S. 220 (2005), when, during sentencing, the court increased his offense level under the guidelines by four levels after finding that he possessed his handgun "in connection with another felony offense." *See* U.S.S.G. § 2K2.1(b)(5). But *Booker* clearly explains that where, as here, a district court applies the guidelines as advisory, judicial fact-finding does not run afoul of the Sixth Amendment. *United States v. Booker*, 543 U.S. 220, 244 (2005); *see United States v. Spence*, 450 F.3d 691, 696-97 (7th Cir. 2006)*; United States v. Robinson*, 435 F.3d 699, 701-02 (7th Cir. 2006); *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005). We hold that the district court's interpretation and application of *Booker* is proper. Furthermore, we note that given the district court's extensive consideration of the appropriateness of Trzeciak's sentence under the 18 U.S.C. § 3553(a) factors, and given that his sentence was within both the properly calculated guidelines range and the statutory range, we refuse to hold that his sentence was unreasonable.

AFFIRMED.