**NOT FOR PUBLICATION**[*]

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| HABIBO A. JAMA, | No. 10-35822 |
| Plaintiff-Appellant, | D.C. No. 2:09-CV-00256-JCC |
| v. |  |
| CITY OF SEATTLE, TODD HARRIS, MATT NESS, JOE PIOLI, LT. STEVE WILSKE, | MEMORANDUM |
| Defendants-Appellees. |  |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted July 13, 2011
Seattle, Washington

Before: CLIFTON and N.R. SMITH, Circuit Judges, and KORMAN,[**]
District Judge.

Plaintiff-Appellant Habibo A. Jama appeals from an order of the district court

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by 9th Cir. R. 36-3.

[**] The Honorable Edward R. Korman, Senior United States District Judge for the
Eastern District of New York, sitting by designation.

1

granting defendants' motion for summary judgment with respect to Jama's claim that her Fourth Amendment rights were violated when members of the Seattle Police Department ("SPD") SWAT team, executing a valid search warrant, forcibly entered her apartment with guns drawn, 8–10 seconds after knocking and announcing their presence and purpose, and detained the five occupants for at most 15–20 minutes.

When police officers executing a search warrant knock and announce, "there [is] no fixed minimum amount of time [they] must wait before entering . . . ." *United States v. Granville*, 222 F.3d 1214, 1218 (9th Cir. 2000). Instead, whether such an entry was reasonable depends upon "the totality of circumstances in a given case." *United States v. Banks*, 540 U.S. 31, 36 (2003). The circumstances here are as follows: On the day that Jama's apartment was searched, agents of the United States Drug Enforcement Administration ("DEA"), in conjunction with local law enforcement officers, including the SPD SWAT team, were executing 17 search warrants simultaneously. The warrant to search Jama's apartment authorized the seizure of drugs, financial records, information on electronic devices such as cellular telephones and digital cameras, and weapons. Based on both surveillance and wiretaps, DEA agents believed that members of the drug conspiracy under investigation "use[d] their cellular telephones constantly," which heightened the agents' concern that the searches could be compromised by a tip-off from other

2

members of the "tight-knit," "very close community," including the other co-conspirators. At approximately 5:42 a.m. on the morning in question—less than twenty minutes before the search was scheduled to commence—Jama's cousin, Farah Jama, was observed by agents unexpectedly entering Jama's apartment.

Once the SWAT team assembled at the door, Habibo Jama and Farah Jama looked down from an upstairs bedroom window at the officers and then quickly backed away from the window. Two DEA agents, who were surveilling the premises, observed this behavior and called out on the radio to the SWAT team, "compromised," to indicate that someone inside the apartment had seen the entry team approaching. While the SWAT team officer who initiated the entry testified that he does not recall "compromise" being called out, and does not remember initiating the entry on that basis, the knowledge of the DEA agents outside who witnessed Habibo Jama and Farah Jama's behavior is imputed to the entire search team, under the doctrine of collective knowledge. *See United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (holding that reasonableness inquiry considers "the collective knowledge of all the officers involved," regardless of whether information was communicated to particular officers); *United States v. Bernard*, 623 F.2d 551, 560–61 (9th Cir. 1980) (same). Under the totality of the circumstances, it was not unreasonable for the SWAT team officers to believe that any further delay in entering

3

would be dangerous, futile, or ineffective, especially because the occupants were on notice that the police were outside and about to enter, even prior to the knock on the door.

Nor was the force used by the SWAT team to secure the premises, after breaching the door, unreasonable. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted).

First, it was not unreasonable, under the circumstances, for SWAT team officers to point their guns at Jama during the initial protective sweep. Because "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence," "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702–03 (1981). Second, because "[a]n officer's authority to detain incident to a search is categorical," *Muehler v. Mena*, 544 U.S. 93, 98 (2005), and because officers have "the authority to use reasonable force to effectuate the detention," *id.* at 98–99

4

(citing *Graham*, 490 U.S. at 396), it was not unreasonable for the SWAT team members to use physical force to move Jama to the living room and to force Jama to the floor—especially when she testified that, when the officers came into the apartment, she ran away. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (internal quotation marks and citation omitted)). Third, it was, for the same reason, not unreasonable for officers to use handcuffs, a "marginal intrusion," to detain the occupants while the residence was being secured. *Muehler*, 544 U.S. at 99 (citing *Graham*, 490 U.S. at 396–97). Fourth, according to Jama's own account, the SPD SWAT team detained Jama for only 15–20 minutes while securing the scene. Appellant's Br. at 8. There is no evidence that this was longer than necessary to permit the officers to conduct a protective sweep and secure the premises. *See Muehler*, 544 U.S. at 98 (listing several "legitimate law enforcement interests" that justify detention, including preventing flight, protecting officers, and facilitating orderly completion of search). The manner in which the officers pointed their guns during the protective sweep here is distinguishable from the more dangerous and threatening use of weapons at issue in the cases cited by Jama.

Jama failed to produce evidence sufficient to survive summary judgment with respect to any of the four individual defendants. As to defendants Ness and Pioli,

5

Jama waived her claims against them because she failed to argue these claims on appeal. As to defendants Wilske and Harris, there is no evidence that either defendant caused, or was even involved with, the alleged injuries. Absent any constitutional violation, there is no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

**AFFIRMED.**