**UNITED STATES of America**

v.

**Phillip Jerome BRUNO and Christopher Jerome Caldwell**

**No. CRIM G–04–17–S.**

United States District Court, S.D. Texas, Galveston Division.

Nov. 10, 2005.

Peter R. Mason, Financial Litigation, U.S. Attorney's Office, Houston, TX, for United States of America.

Ali Reza Fazel, Scardino & Fazel, Richard Edward Banks, Law Firm of Tot Kim

Le, Houston, TX, for Phillip Jerome Bruno and Christopher Jerome Caldwell.

### OPINION AND ORDER

KENT, District Judge.

In a well-reasoned Report the United States Magistrate Judge proffered his recommendation that the joint Motion to Suppress (Instrument no. 64) of the Defendants Christopher Jerome Caldwell and Phillip Jerome Bruno be granted because, on the facts of this case, the law enforcement officials executing the search warrant at Caldwell' s residence violated the " Knock and Announce" provision of the Fourth Amendment. The Government has filed lengthy objections which, in the opinion of this Court, do not precisely address the major concerns of the Magistrate Judge. Having now carefully reviewed the Parties' submissions, the file and the transcript of the Evidentiary Hearing, the Court issues this Opinion and Order.

■■■■ The United States Supreme Court has recently made clear that the " Knock and Announce" rule continues to be a valid part of the Fourth Amendment. *See Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); *see also Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) If the " Knock and Announce" rule retains any preclusive vitality, beyond its application in cases involving its complete disregard, it must be in cases like this one. Here, the officers, despite having a valid arrest warrant, implemented a plan which incorporated, by specific design, a sham compliance with the " Knock and Announce" rule. The search team wanted a tactical advantage so they descended upon Caldwell' s home at 6:00 a.m., knowing the residents would be asleep, with the expressed desire to give Caldwell no time to do anything to react to their knock and announcement before forcibly entering his home. As the Government points out, the " reasonableness" of the " wait time" before a forced entry must be based upon the facts known to the police at the time of entry. *United States v. Banks,* 540 U.S. 31, 37, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) In the instant case, the officers knew they were affording Caldwell no time to respond to their appearance at his front door. As the Magistrate Judge found, they violated all three of the fundamental interests served by the rule of announcement in their over zealous efforts to invade Caldwell' s home. This Court agrees with the Magistrate Judge that *on these facts* the officers executing the search warrant did not wait a reasonable time before forcibly entering Caldwell' s home.

■■■ The Court **REJECTS** the Government' s argument that the inevitable discovery rule should trump any " Knock and Announce" violation. To recognize the application of the inevitable discovery rule in a case like this one would completely nullify the " Knock and Announce" rule.

For the foregoing reasons, the Report and Recommendation of the Magistrate Judge is hereby **ACCEPTED** by this Court in its entirety and incorporated by reference herein.

It is, therefore, the **ORDER** of this Court that the Joint Motion to Suppress (Instrument no. 64) of the Defendants Christopher Jerome Caldwell and Phillip Jerome Bruno is **GRANTED and that all evidence seized during the search of Caldwell' s home on January 12, 2005, is SUPPRESSED.**

### REPORT AND RECOMMENDATION

FROESCHNER, United States Magistrate Judge.

Before the Court is the "Amended Motion to Suppress" of Christopher Jerome

Caldwell; the Motion was joined by Caldwell's co-Defendant, Phillip Jerome Bruno. The Joint Motion seeks to exclude evidence seized by law enforcement officers during the execution of a search warrant at Caldwell's home in Dickinson, Texas, on January 12, 2005. In support of their Motion the Defendants argue that the officers violated the "knock and announce" principle embedded in the Fourth Amendment. After a careful review of the file and the facts peculiar to this case, as developed at an Evidentiary Hearing on June 24, 2005, this Court has concluded that, for the reasons hereinafter expressed, the Defendants are correct.

█ In the opinion of this Court certain facts preceding the execution of the search warrant are crucial to the success of the Defendants' motion. On April 8, 2004, a confidential informant, under the control of a D.E.A. agent, entered Caldwell's home and purchased, directly from Caldwell, 8.4 grams of crack cocaine and 7.5 grams of powder cocaine. On April 20, 2004, the confidential informant purchased 6.2 grams of crack cocaine from Caldwell. On April 30, 2004, the confidential informant purchased 11.4 grams of crack cocaine from Caldwell. On June 10, 2004, the confidential informant purchased 9.1 grams of crack cocaine from Caldwell. On July 16, 2004, the confidential informant purchased 19.1 grams of crack cocaine from Caldwell. All of these purchases were "controlled buys" and, at least some of the transactions, were captured on video and audio tapes. In December of 2004, evidence of these five drug transactions was presented to a federal Grand Jury and a five count Indictment was returned against Caldwell; each count charged

Caldwell with possession with the intent to distribute crack cocaine. As a result of the Indictment an arrest warrant was procured on December 6, 2004. On December 9, 2004, the Government filed a Motion to Seal the Indictment and the warrant until after Caldwell's arrest; the Motion was granted the same day. Despite the existence of the arrest warrant, no prompt efforts were made to arrest Caldwell.[1]

Rather than perfecting a "controlled" arrest of Caldwell pursuant to the warrant-in-hand, D.E.A. agents elected to apply for a search warrant for Caldwell's residence. The search warrant was issued by this Court on January 11, 2005. Thereafter, instead of perfecting a "controlled" arrest of Caldwell and then, with Caldwell in custody, searching his home pursuant to the search warrant, D.E.A. agents concocted a plan to, in effect, attack Caldwell's home at 6:00 a.m. the next morning with the help of the SWAT Team of the League City Police Department. The plan was not complicated. From information given by the confidential informant, the agents knew the lay-out of Caldwell's home: at the end of a hallway a "pretty good distance from the front door" was the master bedroom. They also knew that "at that time in the morning, most likely the Defendant, Mr. Caldwell, would be asleep in his master bedroom." Since the plan was to neutralize any threat posed by Caldwell as "quickly" and as "legally" as possible, two members of the search team (the primary team) were to take a position outside the bedroom window while the others (the secondary team) went to the front door. Once those at the front door knocked and announced, one of the window team was to break the bedroom window and "rake" it

---

1. The Court is aware that an arrest warrant, unlike a search warrant, does not contain a specific time limit within which it must be executed; however, there may be limits to the extent of permissible delay in its execution. *See United States v. Jernigan*, 582 F.2d 1211, 1213–14 (9th Cir.1978), *see also United States v. Wilson*, 342 F.2d 782, 783 (2d Cir.1965)

clean of glass with a riot baton so the other could thrust a brightly lit shotgun through the window, point it at Caldwell, and take control of the situation. Once Caldwell was under control a thorough search would be conducted.

At 6:00 a.m. on January 12, 2005, the search team executed its plan. After taking their positions one member knocked on the front door and yelled "Police, search warrant." "Approximately" 10 seconds later the bedroom window was shattered and the shotgun was pointed at Caldwell and his wife, who were, as expected, still in bed. Almost 15 to 20 seconds later the front door was broken open and the search team entered the house. Bruno, who unknown to the officers had been staying at Caldwell's house, ran from the house but was caught and returned. The subsequent search uncovered, *inter alia,* narcotics and 9 firearms. As a result, a Superceding Indictment was obtained adding new counts against Caldwell and, for the first time, Bruno.

■■■ The Defendants question the search team's compliance with the knock and announce principle. This common-law rule forms a part of the Fourth Amendment reasonableness inquiry. *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) Even though a home owner has no right to prevent police officers armed with a search warrant from entering his house, *United States v. Bustamante–Gamez,* 488 F.2d 4, 11 (9th Cir. 1973), three important interests are served by the rule of announcement: 1) if reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; 2) it guards against the needless destruction of private property; and 3) it symbolizes the respect for individual privacy in one's home. *Miller v. United States,* 357 U.S. 301, 307, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) Accord-

ingly, if the rule is unjustifiably violated, the search is deemed to be executed in an unconstitutional manner and any evidence seized is inadmissible despite the existence of the search warrant. *See Richards v. Wisconsin,* 520 U.S. 385, 393 n. 5, 117 S.Ct. 1416 (1997); *see also United States v. Valdez,* 302 F.3d 320 (5th Cir.2002) With these interests in mind, a Court must judge the reasonableness of the officer's actions in executing a valid search warrant. And the reasonableness is to be determined from an examination of the totality of circumstances in each case. *United States v. Banks,* 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343, 352 (2000)

■■■ The necessary corollary of the knock and announce rule is that the officers must wait for a reasonable amount of time before forcibly entering a home. Obviously, the lapse of time allows the occupant an opportunity to answer the door and comply with the officer's demands. *United States v. Jones,* 133 F.3d 358 (5th Cir.1998) The length of time officers must wait will vary from case to case, but if the door is not answered within a reasonable time, the failure to respond is tantamount to a refusal to allow entry and the door may be broken in. *United States v. James,* 528 F.2d 999, 1017 (5th Cir.1976) Of course, certain factors may create exigent circumstances to justify a shorter waiting time, for example, the possible speedy destruction of evidence like crack cocaine. *United States v. Moore,* 956 F.2d 843, 850 (8th Cir.1992) Nevertheless, while exigent circumstances may relax the time requirement, or even, in some cases, eliminate it completely, officers may not manufacture exigencies, even in good faith, and then take advantage of them. *United States v. Rico,* 51 F.3d 495, 502 (5th Cir. 1995) When determining whether exigent circumstances were manufactured, a Court must consider not only the motivation of

the officers involved, but also the reasonableness and propriety of the investigation tactics that generated the exigency. *Id.* Applying these principles, the search in this case appears unconstitutional.

The primary problem here is that the agents had absolutely no need for a search warrant in the first place. They certainly did not need any more evidence or charges against Caldwell. Caldwell had already been indicted and, given his past record, was already subject to the mandatory life sentence he now faces. In fact, the agents had had an arrest warrant available for over a month at the time the search warrant was executed. The agents, therefore, could have simply waited for an opportune moment when Caldwell was alone in a public place to approach and arrest him without any fear of violence whatsoever.

The second problem, and perhaps the most troublesome, is the unreasonableness and impropriety of the investigation tactics used by the agents. Once the unnecessary search warrant was procured, the agents could have used the pre-existing arrest warrant to arrest Caldwell in some public place and then peacefully searched his home. But the agents chose the most hazardous option available, an early morning raid on Caldwell's house. The choice was obviously a dangerous one. The officers wore SWAT uniforms with bulletproof vests. They hoped to catch Caldwell sleeping and planned to destroy his window and then threaten him with a shotgun before he "could do anything" much less get out of bed, get appropriately dressed and answer the door. *See Richards,* 520 U.S. at 393 n. 5, 117 S.Ct. 1416 (1997) In fact, the speedy window break-in was inevitable; the agents did not want to give Caldwell "time to react to what he hears." This adventuresome choice was made even though the agents knew Caldwell's wife and two children would also be at home, and even though they believed Caldwell could be dangerous and that a gun fight might erupt. Fortunately, the agents' plan did not result in physical harm to any agents or occupants of the house; however, this Court has little doubt that had Caldwell grabbed the pistol that was later found above his headboard, both he and his wife would probably have been shot. All of this risk was completely unnecessary under the circumstances.

Even ignoring the ill-conceived decision to procure and perilously execute a search warrant, the Court cannot find that, under the facts of this case, waiting only "approximately 10 seconds" before entering through the bedroom window was reasonable. The search warrant was executed shortly after 6:00 a.m. in the morning. The agents knew Caldwell had not had a job since August 1995. The agents fully expected the residents to be asleep, and they were. They also knew the front door was a "pretty good distance" from Caldwell's bedroom. Given these facts it was unreasonable to make a forced entry after only "approximately" 10 seconds. *See United States v. Granville,* 222 F.3d 1214, 1218–19 (9th Cir.2000) (Five second wait insufficient at 7:00 a.m. when Defendant was likely to be asleep); *see also Griffin v. United States,* 618 A.2d 114 (D.C.App. 1992) (Thirty second wait not enough at 1:30 a.m. when Defendant was likely asleep) Nor will exigent circumstances justify the "approximately" 10 second wait in this case. There were none here: the agents heard no suspicious sounds coming from inside the home within the 10 seconds after the announcement was made. The mere fact, alone, that drugs can be quickly disposed of is not sufficient justification; besides, the last thing the agents needed in this investigation was the discovery of more drugs to use against Caldwell. Tellingly, when asked at the Evidentiary Hearing, Agent Ervin stated that the pur-

pose of the search procedure was "to make an arrest." Finally, the generalized fear that guns might be present will not suffice, *Richards,* 520 U.S. at 392–94, 117 S.Ct. 1416, especially here, where the agents, although wrongly, had no particularized information from the confidential informant or any other source that Caldwell had firearms in his home. As stated above, the agents cannot "manufacture" exigent circumstances to justify an unconstitutionally quick entry. Nothing in this case that was known to the agents or occurred at the scene justified a forced entry into Caldwell's house within "approximately" 10 seconds of the agent's knock and announcement.

In the final analysis, the search team violated all three of the interests served by the knock and announce rule. They increased the potential for violence with their plan of execution, they needlessly destroyed Caldwell's private property, and they exhibited utter disrespect for the privacy rights of Caldwell and his family in their home.

It is, therefore, the **RECOMMENDATION** of this Court that the Joint Motion to Suppress (Instrument no. 64) of the Defendants Christopher Jerome Caldwell and Phillip Jerome Bruno, be **GRANTED** and that **all evidence seized during the search of Caldwell's home on January 12, 2005, be SUPPRESSED.**

The United States District Clerk **SHALL** serve a copy of this Report and Recommendation on each counsel of record who **SHALL** have until **September 16, 2005,** to file written objections with the District Court. Failure to file written objections to the proposed findings, conclusions and recommendations contained in this report within the allowed time **SHALL** bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice.

August 31, 2005.