Opinion for the Court filed by Circuit Judge PILLARD.
Dissenting opinion filed by Circuit Judge HENDERSON. ■
PILLARD, Circuit Judge:
This appeal requires us to answer a question left unresolved by the Supreme Court in Hudson v. Michigan, 547 U.S. 586; 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006): Whether the exclusionary rule is applicable when law enforcement officers violate the Fourth Amendment’s knock-and-announce rule while executing a warrant to arrest a suspect found at home.
The knock-and-announce rule requires that, before officers executing a warrant enter a home, they knock on the door and announce their identity and purpose, and then wait a reasonable time before forcibly entering. In Hudson, the Supreme Court held that, when officers violate that rule in executing a search warrant, exclusion of the evidence they find is not an appropriate remedy. The Court reasoned that the officers would have discovered the evidence in any event when they went through the house under the authority of the valid search warrant. As the Court emphasized, the knock-and-announce rule “has never protected” any “interest in preventing the government from seeing or taking evidence described in a warrant.” Id. at 594, 126 S.Ct. 2159. Where officers armed with a search warrant have a judicially-sanctioned prerogative to invade the privacy of the home, the knock-and-announce violation does not cause the seizure of the disputed evidence. In that context, the exclusionary remedy’s significant costs outweigh its minimal privacy-shielding role, and its deterrent utility is “not worth a lot.” Id. at 596, 126 S.Ct. 2159.
Unlike the officers in Hudson, who had a warrant to search the home, the officers here acted pursuant to a warrant to arrest a person. An arrest warrant reflects no judicial determination of grounds to search the home; rather, it evidences probable cause to believe that the arrestee has committed a crime, and authorizes his arrest wherever he might be found. If an arrestee is found away from home — at work, on the street, or at someone else’s home — the privacy of his home remains inviolate. So, too, if an arrestee is not at home when officers seek him there, or if he comes to the door and makes himself available for arrest, the arrest warrant does not authorize officers to enter the home. Any prerogative an arrest *31 warrant may confer to enter a home is thus narrow and highly contingent on the particular circumstances of the arrest.
An individual subject to an arrest warrant accordingly retains a robust privacy interest in the home’s interior. That privacy interest is protected by requiring law enforcement officers executing an arrest warrant to knock, announce their identity and purpose, and provide the arrestee with the opportunity to come to the door before they barge in. And, where evidence is obtained because officers violated the knock-and-announce rule in executing an arrest warrant at the arrestee’s home, the exclusionary rule retains its remedial force. Under Hudson’s own analytic approach, then, exclusion of the evidence may be an appropriate remedy.
Justice Kennedy took care to underscore in his separate opinion in Hudson that “the continued operation of the exclusionary rule, as settled and defined by our precedents, is not in doubt.” Id. at 603, 126 S.Ct. 2159. He provided the fifth vote for the majority opinion because the knock-and-announce violation before the court was “not sufficiently related to the later discovery of evidence to justify suppression.” Id. The critical inquiry was there, as it is here, whether the knock-and-announce violation could “properly be described as having caused the discovery of evidence,” id. at 604, 126 S.Ct. 2159, and, if so, whether its costs outweigh its benefits. Where the “requirement of causation” that animates the exclusionary rule has not been obviated as it was by the search warrant in Hudson, id., and where the exclusionary rule retains remedial force to protect the core Fourth Amendment privacy interest in the home, cf. id. at 603-04, 126 S.Ct. 2159, we consider it our duty to apply it.
We thus analyze the factors the Court considered in Hudson to determine whether the exclusionary rule applies when the knock-and-announce rule is violated in the arrest warrant context. We consider whether the violation causes the seizure of evidence such that evidentiary suppression furthers the interests underlying the knock-and-announce rule, and whether the benefits of applying the exclusionary rule outweigh its costs. Examining those factors, we conclude that exclusion was the appropriate remedy here, where officers executing a warrant for defendant Michael Weaver’s arrest sought him at home, violated the knock-and-announce rule, and discovered Weaver’s marijuana upon their forced entry into Weaver’s apartment. Accordingly, we reverse the district court’s decision to the contrary.
I.
Federal agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives began investigating defendant Michael Weaver in 2008, when he came to their attention during the course of a drug-related investigation targeting a different suspect. As part of their investigation into Weaver, the agents searched through trash outside his home and found marijuana. They also learned from the target of the first investigation that Weaver had sold drugs for more than a year and trafficked in significant quantities of marijuana. The agents executed a warrant to search Weaver’s residence in late 2009 and discovered more than 500 grams of marijuana, $38,000 in cash, and drug packaging materials. The agents also reviewed Weaver’s bank records and identified regular, unexplained cash deposits and a balance of more than $100,000 from unknown sources. In April 2010, the agents relied on that information to obtain a warrant for Weaver’s arrest. Prosecutors indicted Weaver on 52 separate counts, including possession with in *32 tent' to distribute marijuana and money laundering.
The government was unable to apprehend Weaver until 2012, when the agents learned the location of his new residence. After arriving at Weaver’s building, the agents knocked on his apartment door twice. There was no answer, but the agents heard movement inside. They were not concerned that Weaver would flee out a-window because the apartment was on a high floor. Less than a minute later, the agents announced “police” and immediately used a key they had obtained from the building’s concierge to unlock the door. They did not inform Weaver that they had a warrant to arrest him. As the agents attempted to open the door, someone inside tried to hold the door closed. The officers were able to push the door open, and, after a brief struggle, they subdued Weaver, arrested him, and removed him from the apartment.
In the course of arresting Weaver, the officers smelled marijuana. One of the officers testified that as soon as he “came in” and “looked to the left” or “turned left” toward the kitchen, he observed “bags of marijuana” on the counter. Based on those observations, the officers obtained a search warrant for the apartment and found several kilograms of marijuana, two tablets of oxycodone, a bag of the drug methylenexdioxymethcathinone (commonly referred to as MDMC, or bath salts), and nearly $10,000 in cash. The government then charged Weaver with three additional counts: one count of possession with intent to distribute marijuana and two counts of possession of a controlled substance.
At trial, Weaver moved to suppress the evidence seized during the 2012 search of his apartment. He contended that the warrant authorizing that search derived solely from the observations agents made while executing the arrest warrants, and that the agents were not legally authorized to be in his apartment when they made those observations because they had violated the knock-and-announce rule. Weaver further argued that Hudson did not preclude the application of the exclusionary rule to his case.
The district court rejected Weaver’s contentions and denied his motion to suppress. The district court first concluded that there was no knock-and-announce violation because the officers knocked, announced “police,” and then waited a reasonable time before opening the door. Even if there had been a violation, the court held that Weaver would not prevail because it concluded that Hudson held the exclusionary rule inapplicable to knock- and-announce violations generally.
In a separate order, the district court held that Weaver’s speedy trial rights were violated with respect to the first 52 counts of the indictment, and so dismissed them. The government then entered into an agreement with Weaver concerning the more recent counts of the indictment. The government dismissed the counts for possession of oxycodone and MDMC, and Weaver agreed to a bench trial on stipulated facts on the remaining charge of possession with intent to distribute marijuana. After that trial, the district court found Weaver guilty.
Weaver appeals the district court’s denial of his suppression motion. On such an appeal, we review the court’s legal conclusions de novo and its findings of fact for clear error. United States v. Pindell, 336 F.3d 1049, 1052 (D.C.Cir.2003).
II.
A.
The Fourth Amendment protects “[t]he right of the people to be secure in *33 their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. Amend. IV. The constitutional reasonableness of a search or seizure in the home depends on, among other things, whether law enforcement officers have complied with the knock-and-announce rule. Wilson v. Arkansas, 514 U.S. 927, 931, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); see also 18 U.S.C. § 3109 (setting forth a statutory knock- and-announcement requirement). The rule requires, subject to exceptions not relevant here, that law enforcement officers executing a warrant — whether for search or arrest — knock on an individual’s door, announce their identity and purpose, and then wait a reasonable amount of time before forcibly entering a home. Wilson, 514 U.S. at 934-36, 115 S.Ct. 1914; see also United States v. Banks, 540 U.S. 31, 38-39, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003); Sabbath v. United States, 391 U.S. 585, 588 & n. 2, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); Miller v. United States, 357 U.S. 301, 312-14, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).
Notwithstanding the district court’s conclusion to the contrary, there is no dispute on this record that the constitutional safeguards imposed by the knock- and-announce rule were violated here. As the government correctly concedes on appeal, federal agents violated the rule by failing to announce their purpose before entering Weaver’s apartment. Appellee Br. 19-20; see also Miller, 357 U.S. at 309-10, 78 S.Ct. 1190; United States v. Wylie, 462 F.2d 1178, 1184-85 (D.C.Cir.1972). Both parties also agree that unless the agents were legally present in Weaver’s home when they viewed the marijuana, their observations could not serve as a lawful basis for the issuance of the search warrant. Appellee Br. 41 n. 11; Appellant Br. 22-23; see Horton v. California, 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). If the officers’ forcible entry into Weaver’s home was unlawful, their presence in his home was also unlawful, and their observations could not serve as the basis for a search warrant. Consequently, the sole question before us is whether the exclusionary rule applies to evidence obtained as a result of a knock- and-announce violation committed when law enforcement officers execute an arrest warrant, as opposed to a search warrant.
Where it applies, the exclusionary rule prohibits the government from introducing in its case in chief evidence obtained in violation of the -Fourth Amendment. See, e.g., Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Evidentiary exclusion “compel[s] respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard” the Fourth Amendment’s commands. Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The Supreme Court has acknowledged, however, that exclusion is not appropriate in every case. Application of the rule is warranted only when its objectives are “most efficaciously served.” United States v. Leon, 468 U.S. 897, 908, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (internal quotation marks omitted); see also Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 2426-27, 180 L.Ed.2d 285 (2011); Herring v. United States, 555 U.S. 135, 140—41, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). “Where suppression fails to yield ‘appreciable deterrence,’ exclusion is ‘clearly unwarranted.’ ” Davis, 131 S.Ct. at 2426-27.
B.
In Hudson, the Supreme Court considered whether exclusion was warranted *34 when law enforcement officers violated the knock-and-announce rule while executing a search warrant. 547 U.S. at 588, 126 S.Ct. 2159. Two factors governed its consideration: whether there was a causal link between the violation and the seizure of evidence and whether the rule’s deterrence benefits outweighed the costs of excluding probative evidence.
As to causation, the Hudson Court reasoned that the exclusionary rule is only triggered when the constitutional violation is “a ‘but-for’ cause of obtaining evidence,” provided that causal connection is not “too attenuated.” Id. at 592, 126 S.Ct. 2159. In Hudson, “the constitutional violation of an illegal manner of entry was not a but-for cause of obtaining the evidence.” Id. That is because the knock-and-announce violation did not expand the breadth of the search authority conferred on the officers by the search warrant they had in hand, pursuant to which they already were privileged to obtain the incriminating evidence. Id.
Even if the knock-and-announce violation had been a but-for cause of obtaining the evidence, causation in Hudson was too attenuated. Id. at 592-93, 126 S.Ct. 2159. Attenuation occurs “when the causal connection is remote.” Id. at 593, 126 S.Ct. 2159. Attenuation also occurs, the Court explained, when “the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.” Id. Having held there was no but-for causation, the Court did not analyze whether causation was too remote. It did hold, however, that even if there were but-for causation, the interests protected by the knock-and-announce rule nonetheless would not, in the search warrant context, be served by suppression of the evidence obtained. Id. at 593-94, 126 S.Ct. 2159. In that context, the Hudson Court observed, the knock- and-announce rule protects personal safety, property, and a residuum of privacy not obviated by the search warrant. It protects personal safety by preventing violence by a surprised resident. Id. at 594, 126 S.Ct. 2159. It avoids destruction of the doorway of a house when officers forcibly open it instead of using the requisite knock and announcement of identity and purpose to summon the homeowner to the door. Id. And it “protects those elements of privacy and dignity that can be destroyed by a sudden entrance” by giving residents an opportunity “to pull on clothes[,] get out of bed,” and otherwise “collect [themselves] before answering the door.” Id. (internal quotation marks omitted). The Court emphasized that “the knock-and-announce rule has never protected ... one’s interest in preventing the government from seeing or taking evidence described in a warrant.” Id. As Justice Kennedy vividly pointed out, “[w]hen ... a violation results from want of a 20-second pause but an ensuing, lawful search lasting five hours discloses evidence of criminality, the failure to wait at the door cannot properly be described as having caused the discovery of evidence.” Id. at 603-04, 126 S.Ct. 2159 (Kennedy, J., concurring). “[T]he interests that were violated ... ha[d] nothing to do with the seizure of the evidence,” leading the Court in Hudson to hold the exclusionary rule inapplicable. Id. at 594, 126 S.Ct. 2159 (majority opinion).
The Court in Hudson separately examined whether the “deterrence- benefits” of applying the exclusionary rule to violations of the knock-and-announce rule during search warrant executions “outweigh its substantial social costs.” Id. (internal quotation marks omitted). The most significant of the “considerable” costs of applying the exclusionary rule is the “grave adverse consequence that exclusion of relevant incriminating evidence always entails,” *35 namely “the risk of releasing dangerous criminals into society.” Id. at 595, 126 S.Ct. 2159. The Court cautioned that allowing an ¿xelusionary remedy also could lead to a “flood” of defendants claiming knock-and-announce violations, which would require judicial resolution of complicated, fact-intensive issues. Id. It could also lead officers to wait longer than constitutionally required before entering a dwelling, and thus “produc[e] preventable violence against officers in some cases, and the destruction of evidence in many others.” Id.
The Court weighed those costs against the deterrence value of applying the exclusionary rule in the search warrant context, which it concluded is minimal. Id. at 596, 126 S.Ct. 2159. Violating the warrant requirement altogether often produces incriminating evidence not otherwise obtainable, see id. and the exclusionary rule is needed to blunt that incentive, see Mapp, 367 U.S. at 656, 81 S.Ct. 1684; Elkins, 364 U.S. at 217, 80 S.Ct. 1437. Violating the knock-and-announce requirement when executing a search warrant, by contrast, does not provide officers with an opportunity to obtain evidence, that the warrant, already in hand, would not otherwise authorize them to get. Hudson, 547 U.S. at 596, 126 S.Ct. 2159; see also id. at 592, 126 S.Ct. 2159. (Where- an unannounced entry is needed to serve important law enforcement interests, such as where officers have a reasonable suspicion that evidentiary destruction or life-threatening resistance would accompany a duly announced entry, the knock-and-announce requirement is suspended. Id. at 596, 126 S.Ct. 2159.) The Court concluded that law enforcement officers armed with search warrants have scant incentive to violate the knock-and-announce rule; moreover, it noted, other deterrents — civil suits and the increasing professionalism of police forces — are sufficient to deter such violations. See id. at 596-99, 126 S.Ct. 2159.
As a result of those considerations, the Court held that evidentiary exclusion was not required when officers violated the knock-and-announce rule in the course of executing a search warrant.
III.
A.
Hudson has not answered the question before us. The government argues, and the dissent agrees, that because the exclusionary rule was held inapplicable in Hudson, it is equally inapplicable here. We of course employ Hudson’s legal framework in considering whether the exclusionary remedy is appropriate here. But we cannot accept the government’s contention that our analysis begins and ends with the outcome of Hudson. We must independently examine whether the logic of Hudson applies here to the same effect, or whether the arrest warrant context at issue here is so materially distinct. that it requires a different result.
The government and dissent propose we follow an interpretation of Hudson that is divorced from its context. They contend that Hudson held that the exclusionary rule has no application to any violation of the knock-and-announce rule, regardless of whether the violation occurred during the execution of a warrant to search the home or to arrest a suspect. Dissent at 45-46. In their view, Hudson already held that the exclusionary rule is inapplicable whenever the knock-and-announce rule is violated — even where officers have only an arrest warrant and not a search warrant.
Hudson does not support that approach. The dissent plucks general statements from Hudson to argue that the Court intended its holding to extend beyond the search warrant context. See Dissent at *36 45-46 & n. 1; see also id. at 50-51. But the Court, contrary to the dissent’s characterization, articulated the question before it in search-warrant-specific terms: The opening sentence of the opinion stated that the question presented was “whether violation of the ‘knock-and-announce’ rule requires the suppression of all evidence found in the search.” 547 U.S. at 588, 126 S.Ct. 2159 (emphasis added). The Court’s reasoning was grounded in the context before it. When describing the interests the knock-and-announce rule protected, for example, it emphasized that “[w]hat the knock-and-announce rule has never protected ... is one’s interest in preventing the government from seeing or taking evidence described in a warrant.” Id. at 594, 126 S.Ct. 2159 (emphasis added). Search warrants — and not arrest warrants — “describe” “evidence” and authorize officers to “take” that evidence. The precedents discussed and relied on by both the majority opinion and Justice Kennedy’s concurrence are the Court’s precedents concerning search warrants, see id. at 593, 126 S.Ct. 2159 (discussing cases “excluding the fruits of unlawful warrantless searches”), further suggesting that the Court did not conceive of its decision as sweepingly as the government contends.[1]
We reject the government’s and the dissent’s insistence that the issue here has already been decided by Hudson. It should go without saying that a holding can be understood only by reference to the context of the case in which it was rendered. See Phelps v. United States, 421 U.S. 330, 333-34, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) (cautioning that the Court’s statements must be “read in the context of the facts of th[e] case” before it); Armour & Co. v. Wantock, 323 U.S. 126, 132-33, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (emphasizing that the Court’s “opinions are to be read in the light of the facts of the case under discussion,” as the Court cannot practically “writ[e] into them every limitation or variation which might be suggestéd by the circumstances of cases not before the Court.”).
The Supreme Court’s Fourth Amendment cases vividly illustrate that the precise scope and limits of -a constitutional principle articulated in one case often are not apparent until the Court has had opportunities to apply it in new situations that help to elucidate it. Compare Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 1415-16, 185 L.Ed.2d 495 (2013) (holding that the use of a drug-sniffing dog on a homeowner’s porch was a search under the Fourth Amendment), with United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (holding that a sniff by a narcotics-detection dog of an individual’s luggage did not constitute a search under the Fourth Amendment); see also Dissent at 48-49 (collecting cases charting the Court’s incremental approach to creating exceptions to the exclusionary rule).
The Court in United States v. Knotts, 460 U.S. 276, 278-79, 281-82, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), for example, held that no search occurred and thus no warrant was required when officers tracked defendants’ whereabouts by placing a radio transmitter in a drum of illicit drug ingredients, so that when defendants picked up the dram they unwittingly carried the transmitter with them. Defen *37 dants had no reasonable expectation of privacy and thus no Fourth Amendment rights against the government using that means to obtain information they already were exposing to the public. Id. at 281-82, 103 S.Ct. 1081. The next year, in United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), however, the Court applied Knotts’s reasoning to support the opposite result on analogous but materially different facts: A similar use of a radio transmitter placed in a can of drug ingredients violated the defendant’s Fourth Amendment rights because the transmitter was used to track the defendant as he carried the chemicals inside a private home. Id. at 707, 104 S.Ct. 3296. United States v. Jones, — U.S. -, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), revealed yet another important consideration. In Jones, the Court considered whether the government’s installation of a GPS device on a defendant’s car to monitor its movements on public roads constituted a search. Id. at 948. The Court in Jones distinguished Knotts and Karo, pointing out that in neither of the prior cases had the Court been faced with a situation in which the defendant possessed the property when the government committed the trespass to insert the information-gathering device. Id. at 952.
We cannot presume that Hudson mandates the same result for violations of the knock-and-announce rule in both the search and arrest warrant contexts. Instead, we must assess whether, as Weaver argues, the arrest warrant context is materially distinguishable from the search warrant context. The government’s and the dissent’s efforts to find in Hudson a categorical rule deciding this case cannot be squared with the pervasive and necessary incrementalism of judicial decision making. Hudson addressed the propriety of the exclusionary remedy for a knock-and-announce violation in the search warrant context. The Court never mentioned the parallel question as it arises in the context of executing arrest warrants. For the reasons discussed in the next sections, we conclude that the differences between search and arrest warrants distinguish this case from Hudson.
B.
The requirements for search warrants and arrest warrants protect distinct privacy interests, and the two types of warrants authorize law enforcement officers to take different actions. The interests the knock- and-announce rule protects correspondingly differ, depending on the type of warrant law enforcement officers are executing. Because of those differences, the Court’s analysis in Hudson cannot apply the same way or yield the same result here.
An individual’s interest in protecting the privacy of his home is of the highest order. See, e.g. Jardines, 133 S.Ct. at 1414; Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). As Justice Kennedy underscored in Hudson.
privacy and security in the home are central to the Fourth Amendment’s guarantees as explained in our decisions and as understood since the beginnings of the Republic. This common understanding ensures respect for the law and allegiance to our institutions, and it is an instrument for transmitting our Constitution to later generations undiminished in meaning and force. It bears repeating that it is a serious matter if law enforcement officers violate the sanctity of the home by ignoring the requisites of lawful entry.
547 U.S. at 603, 126 S.Ct. 2159. “At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from *38 unreasonable governmental intrusion.” Kyllo. 533 U.S. at 31, 121 S.Ct. 2038 (internal quotation marks omitted); see also Jardines, 133 S.Ct. at 1414 (“[W]hen it comes to the Fourth Amendment, the home is first among equals.”); Minnesota v. Carter, 525 U.S. 83, 99, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (Kennedy, J., concurring) (“[I]t is beyond dispute that the home is entitled to special protection as the center of the private lives of our people.”); Payton, 445 U.S. at 585, 100 S.Ct. 1371 (“[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.” (internal quotation marks omitted)).
Law enforcement officers’ authority under an arrest warrant to enter and search a home is both more conditional and more circumscribed than their authority under a search warrant. Officers armed with a search warrant may enter a home and search for the items described in the warrant anywhere in the home where those items might be located. See Maryland v. Garrison, 480 U.S. 79, 84-85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). An arrest warrant, by contrast, authorizes a much more limited intrusion into the home. See, e.g., Steagald v. United States, 451 U.S. 204, 213-14 & n. 7, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In executing an arrest warrant, officers may enter an individual’s home only when they have reason to believe the arrestee is there, Payton, 445 U.S. at 603, 100 S.Ct. 1371, may look only where a person might reasonably be found, and must stop searching once they locate him, Maryland v. Buie, 494 U.S. 325, 330, 332-33, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); United States v. Thomas, 429 F.3d 282, 287 (D.C.Cir.2005).
When officers have lawfully accessed an area of the home in search of an arrestee, they may seize items in plain view that they have probable cause to believe are evidence of a crime. See, e.g., Arizona v. Hicks, 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Arresting officers must not routinely search every room in a home; when arresting an individual at home, the arrest warrant’s authority is confined to locating the person, securing the area within his reach, and making a quick and limited sweep of the immediately adjoining areas from which an attack could be launched. See, e.g. Buie, 494 U.S. at 327, 334, 110 S.Ct. 1093; Chimel v. California, 395 U.S. 752, 763, 766, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Officers may also perform a sweep of other areas of the home if they have “articulable facts which ... would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.” Buie, 494 U.S. at 334, 110 S.Ct. 1093.[2] Once officers find the arrestee, however, they are no longer authorized by the arrest warrant to enter other rooms in the home; the arrestee retains *39 an expectation of privacy in those areas. Id. at 383, 110 S.Ct. 1093. In sum, the timing and scope of lawful searches of a home pursuant to an arrest warrant are limited by whether and where the arrestee is in the home when he submits to arrest.
An arrestee’s location at the time of arrest is likely to depend on whether officers comply with the knock-and-announce rule. The knock-and-announce rule requires officers to announce their presence and purpose and give an arrestee an opportunity to open the door of his home. See Miller, 357 U.S. at 308, 78 S.Ct. 1190 (citing Semayne’s Case (1604) 77 Eng. Rep. 194, 195; 5 Co. Rep. 91a); Banks, 540 U.S. 31, 38-39, 124 S.Ct. 521. Any governmental agent must “signify the cause of his coming, and ... make request to open doors.” Miller, 857 U.S. at 308, 78 S.Ct. 1190 (quoting Semayne’s Case 77 Eng. Rep. at 195). Officers armed with an arrest warrant may only “break open doors to take the person suspected, if upon demand he will not surrender himself.” Accarino v. United States, 179 F.2d 456, 461 (D.C.Cir.1949) (emphasis added) (internal quotation marks omitted).
As the Supreme Court recognizes, when officers break the door of a home to arrest someone, they “invadef] the precious interest of privacy summed up in the ancient adage that a man’s house is his castle.” Miller, 357 U.S. at 307, 78 S.Ct. 1190. In the arrest warrant context, the knock-and-announce rule protects the arrestee’s privacy as well as his property and the officers’ safety. That privacy interest is not limited- — as it is in the face of a warrant to search the home — to providing the arrestee with an opportunity to compose himself or get dressed, but also enables the arrestee to preserve the privacy of his “castle” by surrendering himself at the door. If an arrestee so surrenders himself, officers cannot make the more extensive intrusion into the home that they are authorized to make when an arrestee does not come to the door. The knock- and-announce ' rule consequently protects an arrestee’s interest in shielding intimate details of his home from the view of government agents.
A person’s right to the privacy of his home does not require him to have any special reason for claiming that privacy; the Constitution recognizes a person’s privacy in the home as valuable in and of itself. It is, however, easy to understand the additional value of the knock-and-announce rule to a person facing arrest- at home, who may have any number of reasons for wanting to surrender himself at the door and shield the remainder of his home from view. Someone living with his family might, for example, prefer to surrender himself on his doorstep to avoid being arrested in front of his family members, especially children. A person may also desire to keep private and personal papers and effects in the home, or the fact or identity of a guest, from government agents’ view. The Fourth Amendment’s protection of the privacy of personal spaces, documents, and things at home applies whether or not they are evidence of wrongdoing or a potential source of embarrassment. “Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.” Miller, 357 U.S. at 313, 78 S.Ct. 1190; see also Hicks, 480 U.S. at 329, 107 S.Ct. 1149; Carter, 525 U.S. at 110, 119 S.Ct. 469 (Ginsburg, J., dissenting).
C.
Contrary to the argument advanced by the dissent, our decision in United States v. Southerland, 466 F.3d 1083 (D.C.Cir. *40 2006), does not “directly refute the searcb/arrest distinction” just described. Dissent at 52. Southerland involved a knock-and-announce violation during execution of a search warrant. It was pending on appeal in this court when the Supreme Court decided Hudson. On reargument, Southerland abandoned his constitutional claim and argued that Hudson did not apply to the violation of his statutory knock-and-announce right. 466 F.3d at 1083. We concluded that the constitutional and statutory knock- and-announce rules were one and the same, id. at 1085-86, making the exclusionary remedy equally inapplicable to the violations during Southerland’s and Hudson’s home searches, see id. at 1084-85.
The dissent draws an unwarranted implication from Southerland’s discussion of two older cases — Miller and Sabbath— that had reversed denials of evidentiary suppression. See Sabbath, 391 U.S. at 585-87, 88 S.Ct. 1755; Miller, 357 U.S. at 303-04, 78 S.Ct. 1190. Each of those cases involved violations of statutory knock-and-announce provisions in an arrest context. Southerland invoked those cases in his effort to distinguish Hudson and salvage his exclusionary remedy on the ground that Miller and Sabbath addressed statutory claims and held suppression to be appropriate. 466 F.3d at 1084-85. We rejected the proposed distinction between the constitutional and statutory versions of the knock-and-announce rule. Id. at 1086. The fact that both Miller and Sabbath were arrest cases was not relevant to Southerland, which was a search case; we simply had no occasion to address whether the exclusionary rule continues to apply to a knock-and-announce violation committed when officers seek to arrest a suspect at home.
The Supreme Court’s discussion in Hudson itself was similarly limited. That Court referred to Miller and Sabbath in confirming the common historical roots of the statutory and constitutional knock-and-announce rules, but did not say anything about overruling the suppression remedy where officers fail to knock and announce before entering homes to effectuate arrests. 547 U.S. at 589, 126 S.Ct. 2159. Indeed, Miller and Sabbath’s validation of the exclusionary remedy for knock and announce violations in the arrest context— undisturbed by Hudson — is more of an obstacle to the dissent’s position than Southerland is to ours. Even the government here, which was clearly aware of the Southerland case, see Appellee Br. at 19, does not accord it the force that the dissent urges.
In sum, we agree with Southerland that Hudson provides the relevant legal framework for determining whether exclusion is the appropriate remedy when officers violate the knock-and-announce rule. But, for the reasons already discussed, neither Hudson nor Southerland considered or answered the question before us.
D.
Finally, the out-of-circuit cases the dissent cites, Dissent at 46 n. 3, 51-52, provide at most weak support for the proposition that Hudson applies in the arrest-warrant context.
The First Circuit has held, as the dissent points out, that “Hudson applies with equal force in the context of an arrest warrant.” United States v. Pelletier, 469 F.3d 194, 199, 201 (1st Cir.2006); see also United States v. Jones, 523 F.3d 31, 36-37 (1st Cir.2008). The First Circuit’s decisions, however, do not address the distinc *41 tions between arrest and search warrants.[3] Because we believe those distinctions are material to Hudson’s analysis, the First Circuit’s failure to acknowledge them undercuts those decisions’ persuasive force.
The other cases the dissent identifies are not even arguably in conflict with our decision. See Dissent at 52 (citing United States v. Smith, 526 F.3d 306, 311 (6th Cir.2008), and United States v. Ankeny, 502 F.3d 829, 835-36 (9th Cir.2007)). Those cases concern application of Hudson to the search warrant context, not the arrest warrant context. The dissent quotes language from those opinions out of context to support points not made by the opinions themselves.[4] In Smith, for example, the defendant argued that officers failed to abide by the knock-and-announce rule when conducting a search, not when making an arrest. 526 F.3d at 308. The officers lacked a search warrant, but the court concluded that their search of the defendant’s home was nevertheless reasonable because he was under house arrest and thus had a diminished expectation of privacy. Id. at 308-09. The court concluded that Hudson “was not confined to situations in which the officers violate the knock-and-announce rule after obtaining a [search] warrant as opposed to situations, like this one, where they allegedly violate the rule when they need not obtain a warrant” in order to perform a constitutionally valid home search. Id. at 311. Smith had no occasion to consider whether Hudson was confined to search as opposed to arrest cases.
Similarly, Ankeny’s holding in no way conflicts with ours. In that case, the defendant moved to suppress evidence seized by officers because, he argued, the officers failed to knock and announce their presence when executing a search warrant. 502 F.3d at 833-34.[5] The defendant contended that his case was not governed by Hudson “because the police could have obtained a no-knock warrant but failed to do so,” but the court “decline[d] to limit Hudson so narrowly to its facts.” Id. at 835-36. The court did not consider the propriety of an exclusionary remedy for knock-and-announce violations committed during the execution of arrest warrants. Despite the dissent’s assertions to the contrary, neither Smith nor Ankeny speak to whether or how Hudson applies when officers violate the knock-and-announce rule when they lack a search warrant and ar *42 rive at the house solely to execute a warrant for the inhabitant’s arrest.
IV.
Given the differences between search warrants and arrest warrants, the conclusions drawn in Hudson do not resolve this case. Instead, we must independently examine the factors identified in Hudson — causation and the costs and benefits of exclusion — to determine whether application of the exclusionary rule is appropriate. Examining those factors, we conclude that the exclusionary rule is the appropriate remedy for a violation of the knock-and-announce rule committed during execution of an arrest warrant.
A.
We first consider causation. See Hudson, 547 U.S. at 592-93, 126 S.Ct. 2159. In the arrest warrant context, the place where an individual is arrested determines what officers might see and where they are permitted to search. A knock-and-announce violation, leading to an arrest inside the home rather than at the front door, is thus the immediate cause of officers intruding further within a home than they otherwise would and obtaining evidence that they are not authorized to see. That clear and strong causal connection distinguishes this case from Hudson.
Law enforcement officers’ failure to knock and announce deprives the arrestee of any opportunity to answer the door and surrender himself at the threshold of his home. When not properly summoned by officers knocking and announcing their identity and purpose, an arrestee might be located anywhere in the home, perhaps in a bedroom or on an upper floor of a multilevel dwelling. As a result of entering unannounced, the officers gain access to more — perhaps a great deal more — of a home’s interior than they would have had they fulfilled their constitutional obligation to knock, announce, and allow the arrestee time to come to the door. As officers move through a house to locate an arres-tee, they are able to view more portions of its interior. If they find the arrestee in a study or bedroom, searching places within his immediate reach and protectively sweeping adjacent areas is likely to be more intrusive and revealing than it would have been had those searches occurred on a front stoop or in a foyer. Officers’ failure to knock and announce, therefore, can cause them to view areas of the home and discover evidence that they would not have otherwise have constitutional authority to see. In such cases, the constitutional violation is the direct cause of law enforcement officers obtaining evidence beyond that which the warrant lawfully authorizes.
Requiring officers to knock and announce when executing an arrest warrant guards the privacy interest in the home in a way that the same requirement cannot do when officers have a warrant to search the home. Unlike officers armed with a search warrant, officers armed solely with an arrest warrant do not have the authority to examine any papers, gather any effects, or search the various nooks and crannies of an arrestee’s home. They are authorized to make only the limited intrusion into the home necessary to locate and seize the arrestee. See Payton, 445 U.S. at 603, 100 S.Ct. 1371. Once they locate the arrestee, officers may intrude no further. The knock-and-announce rule, by providing an arrestee with the opportunity to surrender himself at the door, thereby enables the arrestee to minimize the scope of that intrusion and protect the intimacies of his home from the officers’ view. Suppressing evidence obtained in violation of the knock-and-announce rule thus directly serves the interests protected by the rule.
*43 The dissent presumes that, because the same substantive knock-and-announce requirements apply in both the search and arrest context, the rule protects the same interests. See Dissent at 54-55. In Hudson, however, the Supreme Court had no occasion to consider or specify the interests protected by the requirement that officers knock and announce when executing an arrest warrant. See 547 U.S. at 594, 126 S.Ct. 2159 (“What the knock-and-announce rule has never protected ... is one’s interest in preventing the government from seeing or taking evidence described in a warrant.”). Hudson concluded that the interest in privacy in the home that is obviated when a judge issues a search warrant based on probable cause of crime or evidence of crime in the home is an interest that the knock-and-announce rule no longer serves. Our analysis recognizes that the privacy interest in the home remains intact when a judge has made only the different determination of probable cause that a suspect has committed a crime warranting arrest. Application of the knock-and-announce rule in the arrest warrant context enables the arrestee to protect his privacy at home by surrendering himself at the door.
B.
We next weigh,-in the arrest warrant context, the costs of excluding evidence obtained by violation of the knock-and-announce rule against its benefits in protecting the Fourth Amendment right to privacy in the home and deterring violations of that right. See Hudson, 547 U.S. at 594-98, 126 S.Ct. 2159. Because application of the exclusionary rule here would result in appreciable deterrence, the benefits of applying the rule outweigh its acknowledged social costs.
The costs of applying the exclusionary rule to this kind of constitutional violation in the arrest warrant context are similar to those described in Hudson: The courts will need to expend resources to resolve close claims of knock-and-announce rule violations, officers’ entry might be delayed by knocking, announcing, and waiting for response, and, most importantly, relevant, incriminating evidence will be rendered unavailable at a defendant’s trial. Id. at 595, 126 S.Ct. 2159.[6]
Those costs are real, but they are outweighed by a privacy interest and opportunity to deter its violation that is substantially stronger here than the negligible privacy interest and deterrence value in Hudson. As the Court observed in Hudson, “the value of deterrence depends on the strength of the incentive to commit the forbidden act.” Id. at 596, 126 S.Ct. 2159. Officers armed with only an arrest warrant — who, for whatever reason, did not seek or were unable to obtain a search warrant — have a strong incentive to violate, the knock-and-announce rule. Entering a home unannounced to execute an arrest warrant increases the chances that officers will gain entry to parts of a home they would not otherwise have entered to carry out the arrest, and will thereby give themselves an opportunity to find incriminating evidence they otherwise would never see.
The facts of this case aptly highlight when and why officers might want to violate the knock-and-announce rule. The officers were executing an arrest warrant that was over two years old, based on offenses committed even earlier. The offi *44 cers lacked recent incriminating evidence against Weaver. By failing to knock and announce, they were able to obtain new, valuable evidence from Weaver’s kitchen without a search warrant and secure a superseding indictment that was not susceptible to a speedy trial challenge. The government’s ability to parlay an old arrest warrant into new evidence supporting new charges demonstrates precisely why officers armed with only an arrest warrant would be tempted to seek the suspect at home and violate the knock-and-announce rule.
Officers can conduct limited searches incident to a lawful arrest in the home, as the dissent acknowledges. Dissent at 57-58. But the dissent fails to recognize that the scope and intrusiveness of those searches varies depending on where in the home the arrestee is located. By violating the knock-and-announce rule, officers give themselves a better chance of arresting an individual inside his home, where a search or protective sweep will be more revealing than one conducted on the home’s threshold.
Given the strong incentives officers may have to violate the rule, the deterrence calculus is starkly different here than it was in Hudson. In Hudson, the Court’s balancing analysis was driven, in large part, by its conclusion that the incentives to violate the rule were weak and therefore that deterrence was virtually worthless. 547 U.S. at 596, 126 S.Ct. 2159. The opportunities to gain evidence not otherwise accessible increase incentives to violate the rule here, which correspondingly raises the exclusionary rule’s deterrence value. That appreciable deterrence outweighs the costs of the rule.
It would make little sense to jettison the exclusionary rule simply because, as the dissent presumes, officers rarely violate the knock-and-announce rule when executing an arrest warrant. If violations are rare, then the actual cost of applying the exclusionary rule will be minimal. The courts will not be flooded with cases claiming failures to observe the rule and very few dangerous criminals will go free because of officers’ missteps. Cf. Dissent at 56. The paucity of cases challenging violations of the knock and announce rule when officers execute an arrest warrant may very well be due to the deterrent effect of past applications of the exclusionary rule. See generally Sabbath, 391 U.S. 585, 88 S.Ct. 1755; Miller, 357 U.S. 301, 78 S.Ct. 1190.
Here in the arrest-warrant context, unlike in Hudson, there are grounds to conclude that application of the exclusionary rule to knock-and-announce violations would result in appreciable deterrence of constitutional violations. When application of the exclusionary rule provides beneficial deterrence, and that benefit outweighs the costs of the rule, it applies.
C.
The government contends that its agents should not have to wait for an arrestee to take any particular series of steps that might shield his home from the agents’ view. The government is correct insofar as agents need not, for example, make every effort to enable an arrestee to open the door-in a manner that does not expose the interior of his home to view, exit the dwelling, and close the door. But they must give him an opportunity to come to the door. See Banks, 540 U.S. at 38-39, 124 S.Ct. 521. Here, by knocking but failing to announce their purpose, the agents gave Weaver no opportunity to protect the privacy of his home.
The government also argues that even if Weaver had surrendered himself, in this particular case the agents would nonethe *45 less have been able to make the observations that justified the search warrant. The record does not support that conclusion. Because the federal agents violated the knock-and-announce rule, Weaver was not given a chance to surrender himself peacefully at the doorway of his unit or in the hallway of his building. Instead, he struggled with officers who pushed their way inside and eventually overpowered him in order to effectuate the arrest. The record does not reveal how much access to the apartment that struggle gave the agents beyond what they otherwise would have had. It is also unclear whether, given the layout of Weaver’s apartment and the location of the drugs, the officers would have been able to see and smell the marijuana plants from the threshold of his unit if Weaver had opened the door and surrendered himself there.
The only evidence in the record is that agents were not able to observe the drugs until they had entered Weaver’s apartment: An agent executing the warrant testified that “[a]s soon as [he] went in the door, [he] smelled the fresh marijuana,” and that after he entered the apartment and looked to his left he saw the marijuana. The record does not specify how far into the apartment the agent went before he saw the marijuana, how much farther into the apartment he was able to enter as a result of the struggle to subdue Weaver, or whether the marijuana was visible from the doorway. The government has thus failed to create a record that would enable us to conclude that the agents would have made the same observations had they knocked, announced, and arrested Weaver on his threshold. Nor has the government argued that, even if Weaver had surrendered himself at the threshold of his apartment, the drugs would have been observed during a protective sweep of the areas adjacent to where Weaver was arrested.
For all of the foregoing reasons, we conclude that the exclusionary rule is the appropriate remedy for knock-and-announce violations in the execution of arrest warrants at a person’s home. The parties agree that the officers did not satisfy the rule’s dictates here. The district court should have excluded the fruits of that constitutional violation. Consequently, we reverse the district court’s denial of Weaver’s suppression motion and remand for further proceedings.

So ordered.

. The precedents the Court cited and discussed involved home warrants and searches, not arrest warrants executed at home. 547 U.S. at 590-91, 593, 602, 126 S.Ct. 2159 (citing United States v. Ramirez, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)); see also 547 U.S. at 603, 126 S.Ct. 2159 (Kennedy, J., concurring in part and concurring in the judgment) (citing Ramirez).

. The dissent argues that we have mischarac-terized Buie. Dissent at 57. That is not so. • In Buie, the Supreme Court specifically described the kind of sweep officers can make without reasonable suspicion as "quick and limited.” 494 U.S. at 327, 110 S.Ct. 1093. Such a sweep "may extend only to a cursory inspection of those spaces where a person may be found,” and may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Id. at 335-36, 110 S.Ct. 1093. We agree that a sweep supported by a reasonable suspicion may be more extensive. But, such a sweep must be "justified by the circumstances,” id. at 335, 110 S.Ct. 1093, and the government has not argued such circumstances are present here.

. Moreover, it does not appear that in either Pelletier or Jones the defendants brought those distinctions to the attention of the court, nor, indeed, did the government in its briefing in Jones rely on either Hudson or Pelletier.

. Several of the other cases and articles the dissent cites, see Dissent at 46 nn. 2-3, 48, merely describe the holding of Hudson. Those cases do not specify, let alone hold, that Hudson prevents application of the exclusionary rule to a knock-and-announce violation in the arrest warrant context. We have not found imprecise descriptions of Hudson in secondary sources or courts' dicta to provide helpful guidance in applying Hudson’s analysis to the current case. Additionally, in two of the state-court cases the dissent invokes, Dissent at 46 n. 3, the courts held that evidentiary exclusion is the appropriate remedy for violations of state knock-and-announce rules. See State v. Cable, 51 So.3d 434, 444 (Fla.2010); Berumen v. State, 182 P.3d 635, 642 (Alaska Ct.App.2008).

.In Ankeny, the defendant had outstanding arrest warrants, but it appears that officers entered his home pursuant to a search warrant. 502 F.3d at 833 (recounting that officer announced "police, search warrant” before breaking down the defendant's door). In any event, if officers violated the knock-and-announce rule armed with both arrest and search warrants, presumably the officers would, as in Hudson, have a valid basis for seizure of the evidence independent of the knock-and-announce violation, which is not the case here.

. The mere existence of that last cost, always present when the exclusionary rule is applied, is insufficient in and of itself to overcome an appropriate application of the rule. Cf. Leon, 468 U.S. at 906-09, 104 S.Ct. 3405. If it were otherwise, the exclusionary rule would not exist.